FILED & JUDGMENT ENTERED
Steven T. Salata

Apr 14 2014

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

J. Craig Whitley
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| GARY G. BELK | ) | Chapter 7 |
| DIANE T. BELK | ) | Case No. 12-32233 |
| | ) | |
| Debtors | ) | |
| | ) | |
| WAYNE SIGMON, TRUSTEE | ) | |
| IN BANKRUPTCY FOR GARY | ) | |
| G. BELK AND DIANE T. BELK | ) | |
| | ) | |
| Plaintiff, | ) | Adversary Proceeding |
| v. | ) | Case No. 13-3002 |
| | ) | |
| GARY G. BELK | ) | |
| DIANE T. BELK | ) | |
| | ) | |
| Defendants. | ) | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**THIS MATTER** was before this Court on February 4, 2014 and March 27, 2014 for trial on the Trustee's Objection to Discharge. Wayne Sigmon appeared as the Plaintiff/Trustee and as Counsel for the Trustee. Thomas Templeton appeared on behalf of the Debtor/Defendants.

1

**STATEMENT OF CASE**

The Trustee objects to the Debtors' discharge under Bankruptcy Code Sections 727(a)(4) (A)(false oath), 727(a)(4)(D)(withholding recorded information) and 727(a)(5)(failure to explain loss of assets). Subject matter jurisdiction exists pursuant to 28 U.S.C. §1334(a). This action is a "core proceeding under 28 U.S.C §157(b)(2)(J).

**FACTS AND PROCEDURAL BACKGROUND**

Defendants Gary G. Belk ("Gary Belk") and Diane T. Belk (collectively, the "Belks") filed a voluntary petition under Chapter 7 of the Bankruptcy Code in this Court on September 14, 2012. Plaintiff Wayne Sigmon was appointed Trustee ("Trustee") for the Belks' bankruptcy estate.

Prior to the 341 Creditors Meeting, the Trustee asked for a copy of the Belks' 2011 federal income tax returns. The Belks sent him an incomplete document, consisting of only the first two pages of the tax return. At the Creditors Meeting, held on October 17, 2012, the Trustee reiterated his request and specified that he wanted a complete copy of the Belks' 2011 income tax returns and all attachments thereto.

The Belks then provided him with the complete thirty-three page federal tax return. In reviewing this document, the Trustee discovered a corporation owned by Gary Belk not mentioned in the Belk's bankruptcy petition, schedules, and statements (collectively, the "Petition"). Schedule C of the tax return, (Profit or Loss From Business), referenced an entity named "Independence Entertainment, LLC," with annual revenues of $233,610. After searching the N.C. Secretary of State's records, the Trustee learned that this company had been

2

administratively dissolved only three months before the Belks' case was filed.[1]  He also learned that Gary Belk had been Independence Entertainment, LLC's managing member.

On November 20, 2012, the Trustee demanded that the Belks produce all of Independence Entertainment's accounting records and tax returns, from inception to closing. The Belks responded with a single three-page document, which appears to be an accounting ledger in the name of "Gary Belk-Pots O' Gold."  While a few more documents were subsequently provided, these were not accounting or tax records, but affidavits from Gary Belk's brother, B.V. Belk, and his accountant, F.R. Black.  These documents were not all of Independence Entertainment's existent records.  They were not even all of the records in Gary Belk's possession or control.  At trial, Gary Belk and his accountant referenced a CD containing many additional business records, and expressed surprise that these had not been turned over to the Trustee, now seventeen months after the bankruptcy case was filed.

With the Trustee's discovery and demand, the Belks scrambled to clean up their bankruptcy petition.  On December 19, 2012, they amended their response to question of 18 of the Statement of Financial Affairs.  This part of the bankruptcy petition requires an individual debtor to: "list, the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partner in a partnership, sole proprietor, or was self-employed in a trade, profession, or other activity either full- or part-time within six years immediately preceding the commencement of this case, or in which the debtor owned five percent or more of the voting or equity securities within six years immediately preceding the commencement of this case."

---

1. According to the records of the N.C. Secretary of State, Independence Entertainment, LLC was dissolved on June 20, 2012.

3

In the original Petition, the Belks listed only Gary Belk's real estate business.[2] After the Trustee's discovery, they amended their response to include Independence Entertainment, LLC and to state that it was a sweepstakes business that operated between August 2010 and 2011.

At some point, the Trustee ascertained that Gary Belk had transferred the business assets[3] of Independence Entertainment, LLC, including its equipment and leased property to a third party who agreed to assume the lease. This transfer was also not disclosed in the Belk's bankruptcy Petition. Question #10 of the Statement of Financial Affairs requires a debtor to list all property transferred within two years of bankruptcy. In their original Petition, and in the amended Statement of Financial Affairs, the Belks attested that they had made no such transfers.

On January 10, 2013, the Trustee objected to the Belks' discharge due to their failure to disclose Independence Entertainment and these matters. This act occasioned yet another amendment to the petition, with the Belks now disclosing the prepetition transfer of the Independence Entertainment business assets that the Trustee had discovered. In this second amendment, the Belks stated that on December 15, 2011, Gary Belk's ownership interest in Independence Entertainment, LLC and the lease of its premises and the business equipment had been assigned to a third party, Tom Wicker. They further stated that the consideration for the transfer was Wicker's assumption of the lease obligation and his agreement to pay other business debts of Gary Belk and Independence Entertainment, LLC. *See* Amended Statement of Financial Affairs 4, ECF No. 21. These transactions would not be further explained until trial, and even then, they were not clearly explained.

By end of the original trial on February 4, 2014, both sides were in agreement that Diane T. Belk was not an active participant in these matters and should receive her discharge. Thus the

---

[2] Gary Belk is a realtor.
[3] As discussed below, exactly who held title to these assets and who owed the lease and other business debts, remains unclear.

4

Complaint is **DISMISSED WITH PREJUDICE** as against Diane T. Belk. The remainder of this decision pertains only to Gary G. Belk.

## SUBSEQUENT PROCEEDINGS

At the original trial, the Debtor and his accountant referenced a CD containing additional business records and a large box of documents. This was the first time the Trustee had learned of the possible existence of additional documents. At the end of that trial, the Court afforded Gary Belk an opportunity to turnover those documents to the Trustee.

At the continued trial on March 27, 2014, the Trustee held up a large folder containing records of Independence LLC that had only recently been produced. The Court reopened the record to allow the Trustee to question Gary Belk on the documents he turned over. Although the Debtor turned over additional records, we still do not know if they are the complete records and if there are still records missing. In any event, the production was not timely.

## DISCUSSION

The bankruptcy process is designed to give honest but unfortunate debtors a fresh start "unhampered by the pressure and discouragement of preexisting debt." *Farouki v. Emirates Bank Intern., Ltd.*, 14 F.3d 244, 248 (4th Cir. 1994) (*quoting Lines v. Frederick*, 400 U.S. 18, 19 (1970). At the same time, "the right of debtors to a fresh start depends upon the honest and forthright invocation of the Code's protections...," and are "inherent in the bargain for the discharge." *In re Kestell*, 99 F.3d 146, 149 (4th Cir. 1996).

Among other obligations, the bankruptcy bargain includes a duty by a debtor to fully and accurately disclose his finances. 11 U.S.C §521(1) requires a debtor to file "a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of the debtor's financial affairs[,]" which per, 28 U.S.C. §1746 are filed under the penalty of perjury.

5

Section 521(3) requires a debtor to cooperate with his trustee in the performance of his duties. Bankruptcy Rule 4002(4) requires the debtor to "cooperate with the trustee in the preparation of" the complete inventory of the debtor's property required by Rule 2015(a)(1). Fed. R. Bankr. P. 4002(4). Section 521(a)(4) requires a debtor to surrender to the trustee all property of the estate and any recorded information, including books, documents, records, and papers, relating to property of the estate.

Filing bankruptcy is a serious undertaking and these are serious duties. Accordingly, sections of §727 provide for a discharge to be withheld from those who "play fast and loose with their assets or with the reality of their affairs." *Farouki*, 14 F.3d at 249 (*quoting In re Tully*, 818 F.2d 106, 110 (1st Cir.1987)).

It is the Trustee's burden to prove by a preponderance of the evidence that the Debtors are not entitled to a discharge. *Id.*; Fed. R. Bankr. P. 4005. Once the Trustee has established a prima facie case, the burden shifts to the Debtors to explain to provide satisfactory, explanatory evidence of why the discharge should nevertheless be granted. *Id.*

The Trustee maintains that Gary Belk should denied his discharge under §§ 727(a)(4)(A), (a)(4)(D), and (a)(5) of the Bankruptcy Code.

**A. Count 1: §727(a)(4)(A) False Oath or Account.**

Under §727(a)(4), a debtor's discharge should be denied if "the debtor knowingly and fraudulently, in or in connection with the case— made a false oath or account."

The purpose of this section is to "ensure that a debtor provides complete and accurate information to the bankruptcy court and those with an interest in the administration of the debtor's estate." *In re Mack*, No. 07–080496, 2009 WL 2998975, at *3 (Bankr. M.D.N.C. Sept. 18, 2009). Whether a debtor has made a false oath within the meaning of § 727(a)(4)(A) is a question of fact. *Williamson v. Fireman's Fund Ins. Co.*, 828 F.2d 249, 251 (4th Cir.1987).

6

In order to prevail on a §727(a)(4)(A) discharge objection, the following five elements must be established: "(1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related to a material matter to the bankruptcy case." *In re Mack*, 2009 WL 2998975 at *3; *See also Williamson*, 828 F.2d at 251. These elements must be established by a preponderance of the evidence. *Farouki*, 14 F.3d at 249.

The first requirement, that there be a statement made under oath, is easily met. "A debtor's petition, schedules, statement of financial affairs, statements made at a 341 meeting, testimony given at a 2004 examination, and answers to interrogatories all constitute statements under oath for purposes of §727(a)(4)(A)." *In re Self*, 325 B.R. 224, 245 (Bankr. N.D. Ill. 2005); *See also* 6 Collier on Bankruptcy ¶ 727.04 [c] (Alan N. Resnick & Henry J. Somme reds., 16th ed. 2014); *In re Mack*, 2009 WL 2998975, at *3. Furthermore, "an omission in the debtor's sworn bankruptcy schedules and statement of financial affairs constitutes a "statement under oath" for purposes of § 727(a)(4)(A)." *In re Kontos*, 12-50156C-7W, 2014 WL 176571, at *6 (Bankr. M.D.N.C. Jan. 13, 2014).

Gary Belk's petition, schedules, original and amended statements of affairs, testimony at the 341 meeting, his testimony at the 2004 examination, his answers to interrogatories, and his testimony at trial all constitute statements made under oath.

The second requirement under §727(a)(4)(A), that the statement was false, is also met. In the original Petition, Gary Belk failed to disclose his ownership of Independence Entertainment, LLC, although this information was responsive to Schedule B, 13 (stock and interests in incorporated and unincorporated businesses).

Further, Gary Belk failed to disclose the transfers of the Independence Entertainment assets, although this information was responsive to Statement of Financial Affairs, Question 18. Third and fourth, at the 341 meeting Gary Belk was sworn and then, as with all debtors, asked if there are were amendments to the Petition and Schedules. Gary Belk failed to disclose these matters on that occasion as well, thereby repeating (by omission) the two prior false statements.

Thereafter, when the Trustee discovered Gary Belk's interest in Independence Entertainment, LLC, the Belks quickly amended their statement of affairs to list that entity. In doing so, Gary Belk made a further false statement. On this occasion, Gary Belk stated that the assets of Independence Entertainment, LLC (including the lease of its premises and its business equipment) had been assigned to Tom Wicker in consideration for his assumption of the lease obligation and payment of other business debts. This was untrue. Gary Belk actually surrendered these assets, not to Wicker, but to his brother/landlord, B.V. Belk. His reason for doing so was that Gary Belk and/or Independence Entertainment became unable to satisfy the lease as well as a loan owed to B.V. Belk.[4]

The third element, that the debtor must have known the statements at issue were false when he made them, is also met. The testimony at issue involved Gary Belk omitting his ownership interest in a business and omitting the transfer of his ownership in the business and then misrepresenting to whom he transferred those assets. This was Gary Belk's business and his primary source of income. He obviously knew it existed and knew what happened to its assets. This information is so clearly responsive to the inquiries on Schedule B and on the Statement of Financial Affairs, there can be no doubt that Gary Belk knew that this information was required. Thus, by omitting it, he knew that his schedules and statements were false. Gary

---

[4] As noted below, it is still unclear whether these obligations were owed by Gary Belk, Independence Entertainment, or both. Similarly, it is yet unknown whether the assets in question were owned by Gary Belk or Independence Entertainment.

Belk's trial testimony that these false statements were the product of simple mistakes, mishap, carelessness, etc, is not credible.

The fourth element, that the false statements were made with intent to defraud, is met. "Fraudulent intent involves a material representation that the debtor knows to be false or an omission that the debtor knows will create an erroneous impression." *In re Kontos*, 2014 WL 176571, at *8; (*citing In re Chavin*, 150 F.3d 726, 728 (7th Cir.1998)). Fraudulent intent may be established by "circumstantial evidence or by inferences drawn from a course of conduct." *Id.* (*see also Williamson*, 828 F.2d at 252; *Mack*, 2009 WL 2998975, at *4). A debtor's "reckless indifference to the truth" is also considered "the functional equivalent of fraudulent intent." *In re Sieber*, 489 B.R. 531, 554 (Bankr. D. Md. 2013). Furthermore, "a determination of fraudulent intent depends largely upon an assessment of the credibility and demeanor of the debtor." *Id.*

Gary Belk's obfuscation about the transferee of the business assets is particularly instructive as to his state of mind. The transfer of the business assets was made in satisfaction of a preexisting debt, meaning B.V. Belk's lease and loan. Although a significant business asset, that transfer was first ignored by Gary Belk in the Petition. Then, when discovered by the Trustee, Gary Belk amended his Statement of Financial Affairs, and in doing so, misrepresented the transfer as having been made to a third party, Tom Wicker. Had he disclosed the truth, that the transfer was to an insider like B.V. Belk, it would likely have been attacked by the Trustee as an insider preference or a fraudulent conveyance. On the other hand, an arms length transfer to a third party like Wicker in exchange for assumption of a lease obligation and equipment loan, would not likely to be challenged. The fact that B.V. Belk's role in these matters was minimized by Gary Belk in the original petition and then misrepresented in his amendment strongly suggests he was attempting to first favor, and then protect, his brother.

9

Finally, there is the matter of the present uncertainties involving the Petition. Gary Belk has filed, and now twice, amended his statement of affairs under penalty of perjury. Even so, as of the trial date, the nature of Gary Belk's ownership interest in Independence Entertainment or the nature of the assignment of that interest is still entirely unclear.

Based upon the totality of the circumstances, and upon a careful assessment of the credibility and demeanor of the defendant, this Court is satisfied that Gary Belk made (by omission) these false statements with intent to deceive.

The final element, that the statements by the debtor relate to a material matter to the bankruptcy case, is also met. "A false statement relates to a material matter when it concerns the existence and disposition of a debtor's property." *In re Kontos*, 2014 WL 176571, at *8 (*citing Williamson*, 828 F.2d at 252)). Here, the false statements related to Gary Belk's ownership interest in a company and the transfer, or disposition, of that interest pre-petition. As noted above, there matters pertained to his property (either his equity interest in Independence Entertainment or the business assets themselves), and his finances. These matters also implicate a possible insider preference under Section 547 or a Section 548 fraudulent conveyance. Thus, the statements are material and sufficient to bar discharge.

### B. Count 2: §727(a)(4)(D)  Knowingly and Fraudulently Withheld Recorded Information

Under 11 U.S.C. §727(a)(4)(D), a debtor's discharge should be denied if, "the debtor knowingly and fraudulently withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs." The party objecting to discharge under 11 U.S.C. § 727(a)(4)(D) has the initial burden of showing that: "1) the withholding of documents was done by the debtor or someone for whose conduct the debtor is legally responsible; 2) was in

10

connection with a case; 3) was withheld from an officer of the estate entitled to possession; 4) was done knowingly and fraudulently; and 5) relates to the debtor's property or financial affairs. *In re Slocombe*, 344 B.R. 529, 534 (Bankr. W.D. Mich. 2006). Once the Trustee meets this initial burden, the debtor must bring forth enough credible evidence to dissuade the court from exercising its discretion to deny debtor's discharge based upon the evidence presented by the objecting party. *Id.*

Here, Gary Belk has failed to turnover to the Trustee adequate documentation to explain the business activities of Independence Entertainment, LLC. He knowingly and fraudulently, in connection with his Chapter 7 case withheld from the Trustee recorded information, including books, documents, records, and papers relating to their property or financial affairs. Prior to the trial, Gary Belk had only turned over a three-page document relating to Independence Entertainment. In his answer to this complaint, paragraph 12, Gary Belk expressly represented that no other business records existed. He knew, but never admitted until trial, that a CD of records relating to Independence Entertainment existed. F.R. Black, Gary Belk's accountant, confirmed the existence of such records, explaining that at one time, he possessed these records in paper form.

It was only after the Court afforded Gary Belk a post-trial opportunity to turnover these records, that he made any kind of effort to do so. This was after more than a year of the Trustee trying to obtain these documents, several motions, a complaint objecting to discharge, and a trial on the same. It was too little too late. These documents were withheld and the only two people identified as having possession were Gary Belk and his accountant, his legal agent. The first requirement is met.

Obviously, and for the reasons stated above, the withholding of records was in connection with this bankruptcy case. These records were withheld from the Chapter 7 Trustee, an officer of the estate entitled to possession; this was done knowingly and fraudulently; and they relate to the debtor's property or financial affairs. Under 11 U.S.C. §727(a)(4)(D), Gary Belk's discharge must be denied.

### C. Count 3: 727(a)(5)  Failure to Explain Loss of Assets

11 U.S.C. §727(a)(5) provides that the debtor should be denied a discharge if "the debtor has failed to explain satisfactorily ... any loss of assets or deficiency of assets to meet the debtor's liabilities."  The initial burden is on the Trustee to show evidence establishing the basis for his objection. *See In re Ottoson-King*, 3 Fed. Appx. 147, 151 (4th Cir. 2001).  More specifically, "the Trustee must "establish that the debtor at one time owned a substantial identifiable asset, not too remote in time to the date of the commencement of the case; [and] that on the date of filing the voluntary petition the debtor no longer had the particular asset." *In re Hahn*, 362 B.R. 542, 548 (Bankr. S.D. Fla. 2007) There is no requirement for a showing of fraudulent intent under § 727(a)(5). *Compare* 11 U.S.C. § 727(a)(4) with 11 U.S.C. § 727(a)(5). Rather, "all an objecting creditor need do is identify missing assets; once that is done, the debtor must explain in a satisfactory manner the loss of those assets." *In re Ottoson-King*, 3 Fed. Appx. at 151.

Any explanation a debtor gives regarding missing assets must be "reasonable and credible so as to satisfy the court that the creditors have no cause to wonder where the assets went." *Id.* (*citing Farouki,* 133 B.R. at 777). A debtor meets this burden if he convinces the judge of his good faith and business-like conduct. *In re Shapiro*, 59 B.R. 844, 848 (Bankr. E.D.N.Y. 1986); *In re Frank*, 14 B.R. 166, 168 (Bankr. S.D. Fla. 1981).  "Although the debtor's records will provide the most convincing explanation of his financial problems, they are not an

12

absolute prerequisite to a discharge." *In re Thomas*, No. 86-3560, 1987 WL 37635, at *2 (4th Cir. June 3, 1987). However, "[T]he failure to offer documentary evidence to corroborate a debtor's testimony as to the loss or disposition of assets may justify the denial of a discharge pursuant to Section 727(a)(5)." *In re Ottoson-King*, 3 Fed. Appx. at 151.

Whether a debtor's explanation is satisfactory is in the court's discretion. *See In re Hansen*, 325 B.R. 746, 763 (Bankr. N.D. Ill. 2005). The explanation need not be "far-reaching and comprehensive," but it must be more than a "vague, indefinite, and uncorroborated hodgepodge of financial transactions." *Id.* What matters is the "completeness and truth" of the explanation. *Id.*

Here, Gary Belk has never provided information by which the bankruptcy Trustee could even know definitively what assets were owned by Independence Entertainment, LLC or, alternatively, Gary Belk relating to his sweepstakes business. With no records, there is simply no way of knowing what these assets were.

Until the trial, Gary Belk had never truthfully explained to the Trustee what happened to these assets. He didn't disclose them, and then upon discovery, suggested that they had been transferred in an arms length deal to a third party in exchange for an assumption of debts. It was only at trial that it was learned that Gary Belk surrendered these business assets to his brother in a potentially avoidable transfer. Even after the trial, Gary Belk cannot provide, in account form, the business records by which the particular assets and the putative liabilities can be verified.

The discharge must be denied under Section §727(a)(5).

**SO ORDERED.**

| | |
|---|---|
| This Order has been signed electronically. The Judge's signature and Court's seal appear at the top of the Order. | United States Bankruptcy Court |